Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| WM CAPITAL PARTNERS 53, LLC<br><br>Apelante<br><br><br>v.<br><br><br>BARRERAS, INC., Y GABLES TOWERS, INC.<br><br>Apelados | KLAN202201029 | **APELACION**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>**SJ2020CV01220 (807)**<br><br><br>Sobre: **Regla 49.2 (1) de Procedimiento Civil; Pleito Independiente de Sentencias y Órdenes; Sentencia Declaratoria** |

Panel integrado por su presidente el juez Hernández Sánchez, la juez Santiago Calderón y el juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2025.

Comparece ante nos, WM Capital Partners 53, LLC, en adelante, Capital o apelante, solicitando que revisemos la *"Sentencia"* emitida sumariamente por el Tribunal de Primera Instancia de San Juan, en adelante, TPI-San Juan, el 3 de marzo de 2022. La misma fue notificada el 4 de marzo de 2022. En la sentencia recurrida, el Foro Primario desestimó la *"Demanda Enmendada"* de Capital en contra de Barreras, Inc., en adelante, Barreras y de Gables Towers Inc., en adelante, Gables o apelada. En el pleito que incoó, al amparo de la Regla 49.2 (1) de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2, sobre Pleito Independiente de Nulidad de Orden, Capital solicitó al Foro Primario que, entre otras cosas,

---

[1] Véase Orden Administrativa OATA-2023-131 del 14 de julio de 2023, donde se designa al Juez Alberto Luis Pérez Ocasio en sustitución de la juez Alicia Álvarez Esnard.

decretara la nulidad de la Sentencia emitida por el TPI-San Juan el 18 de diciembre de 2017.

Por los fundamentos que expondremos a continuación, y en cumplimiento de la determinación del Alto Foro local, *confirmamos* la sentencia apelada.

**I.**

La situación de hechos que versa sobre la controversia que nos trae Capital comienza en el año 2020. Sin embargo, algunos de los hechos que forman parte de los principios del tracto procesal ante esta Curia, se remontan al *año 1960.*

Por lo extenso y complejo de los eventos que contextualizan la controversia, nos limitaremos a hacer una sucinta enumeración de los hechos más importantes. Para los fines de que este Tribunal pudiera obtener un marco procesal y fáctico completo, la apelada trae a nuestra atención la *"Resolución"* de un panel hermano de este Foro en el año 2018 (KLCE201800350) adjuntado en el apéndice del recurso.[2] Refiriéndonos exclusivamente a la mencionada Resolución,y los recursos de las partes, hacemos el siguiente desglose de hechos:

1. En el 1960, Barreras y el First National City Bank of New York crean un contrato de arrendamiento con derecho a edificar. En ese suelo se construyó una estructura que consta de dos (2) edificios, con el número de finca núm. 35,957. El contrato dispone que, si el mismo culmina, Barreras se convertiría en el dueño de la edificación construida, sin gravámenes ni cargas. También impuso en la arrendadora la responsabilidad de pagar los impuestos al CRIM.

2. El First National City Bank of New York cede su arrendamiento, y eventualmente lo adquirió Gables en el año 2005, quien continuó pagando los cánones de arrendamiento y manteniendo el edificio construido.

---

[2] Apéndice del recurso, págs. 92-106.

3. Gables solicitó unos prestamos de R.G. Premier Bank, y garantizó los mismos hipotecando el edificio y el arrendamiento de este.

4. La garantía de lo prestamos de Gables es eventualmente adquirida por Scotia Bank, y posteriormente por Capital.

5. El 17 de julio de 2012, Scotiabank, *hoy Capital*, presentó una demanda en cobro de dinero y ejecución de garantías contra Gables por incumplimiento con unos términos del contrato de arrendamiento. Barreras solicitó intervención en este pleito, alegando que Capital pretendía ejecutar unas garantías que recaían sobre unos bienes en los cuales reclamaba tener un interés propietario.

6. El 1 de octubre de 2013, Barreras le comunicó a Gables que deseaba cancelar el contrato de arrendamiento, por no haber pagado el CRIM, consolidándose así una deuda que ascendía los $800,000.00, y la falta de mantenimiento sobre los inmuebles objetos del contrato de arrendamiento.

7. Luego de unos intentos infructuosos para liquidar la deuda con Gables, Barreras presentó una demanda de desahucio contra ella el 28 de octubre de 2013. El TPI-San Juan declaró la misma *"Ha Lugar"*. Sin embargo, un Tribunal de Apelaciones revocó la sentencia.[3] El panel hermano concluyó que el Foro Primario carecía de jurisdicción para adjudicar la controversia, ya que las partes del contrato de arrendamiento, según lo estipulado en este, estaban obligadas a resolver cualquier controversia referente a incumplimientos contractuales, *mediante arbitraje*.

8. Scotiabank solicitó intervenir en esta demanda, pero fue denegada por el Foro Primario. Luego, presentó un recurso de *Certioari* al Tribunal de Apelaciones, quien denegó expedir el auto.

9. El 18 de junio de 2014, el TPI-San Juan declaró *"Ha Lugar"* la petición de Barreras para intervenir en la demanda en cobro y ejecución de hipoteca.

10. En síntesis, Barreras argumentaba que, al amparo del contrato de arrendamiento, y el derecho de propiedad que adquirió por virtud de este sobre la finca 35,957, impedía la ejecución de hipoteca que pretendía Scotiabank. Por su parte, Scotiabank argüía que los préstamos que le hizo a Gables estaban garantizados con los edificios de la finca núm. 35,957. Esto último era un derecho propietario a su favor, que lo facultaba a subrogarse en el contrato de arrendamiento con Barreras. Además, era la postura de

---

[3] KLAN201401068 cons. con el caso KLAN201401070.

Capital que no intervenir en estos procedimientos atentaba contra el debido proceso de ley.

11. El 31 de diciembre de 2014, Scotiabank y Gables presentaron conjuntamente un *"Acuerdo de transacción para que se dicte sentencia"*. El mencionado acuerdo contemplaba, entre otras cosas, la ejecución de las hipotecas que gravaban los bienes que Barreras, quien se opuso al acuerdo, y reclamaba como su propiedad.

12. El 5 de febrero de 2015, el TPI-San Juan no aprobó el acuerdo entre Gables y Scotiabank, por entender que la vigencia del arrendamiento entre Barreras y Gables, el cual se encontraba dilucidándose en un pleito de arbitraje, estaba aún en controversia.

13. Luego de una solicitud de reconsideración, el 28 de abril de 2015, el Foro Primario revocó su dictamen, determinando esta vez que el referido contrato de arrendamiento continuaba vigente, pues no existía dictamen alguno que decretara la resolución del mismo Barreras solicitó una reconsideración que fue denegada. Luego, el 6 de agosto de 2015, recurrió al Tribunal de Apelaciones para impugnar el acuerdo transaccional. Sobre este asunto, el Foro Intermedio revoco al TPI-San Juan, por entender que la ejecución de dicho acuerdo ponía en riesgo los derechos de Barreras.[4]

14. El 31 de agosto de 2015, Scotiabank le solicitó a la Asociación Americana de Arbitraje, en adelante, AAA, que le permitiera intervenir en el proceso de arbitraje entre Gables y Barreras, toda vez que poseía un derecho real hipotecario sobre la finca objeto del contrato de arrendamiento. El 21 de octubre de 2015, la AAA denegó la solicitud de intervención, por entender que la participación del mismo solo estaba sujeta a las partes del contrato, y que el asunto planteado por Scotiabank no está regulado por el negocio jurídico entre Gables y Barreras.

15. En su dictamen, la AAA concluyó que Gables incumplió con una condición del negoció jurídico, lo que facultó a Barreras a terminar el contrato de arrendamiento.

16. El 31 de octubre de 2016, Gables recurrió al TPI-San Juan para impugnar el *Laudo de Arbitraje*. Capital compareció solicitando autorización para intervenir en el proceso de revocación del laudo.

17. El 16 de enero de 2017, Capital presentó una Demanda de Sentencia Declaratoria en la Corte Federal para el Distrito de Puerto Rico, en adelante, Tribunal Federal (Civil No. 17-

---

[4] KLAN201501215.

1122). Luego de una intervención de Barreras, el Tribunal Federal desestimó la demanda de Capital el 17 de agosto de 2022.

18. El 13 de febrero de 2017, el TPI-San Juan denegó la intervención de Capital, y el 6 de diciembre de 2017 denegó el recurso de Gables, oponiéndose al laudo.

19. El 15 de febrero de 2018, Barreras presentó una *"Moción en Solicitud de Orden en Ejecución de Sentencia"*. En atención a esta solicitud, el Foro Primario emitió una orden y mandamiento de ejecución, en el cual le ordenó al Registro de la Propiedad a inscribir el dominio de la finca núm. 35,957 a favor de Barreras, libre de carga o gravamen. Es decir, ordenó la eliminación de las hipotecas a favor de Capital.

20. El 12 de marzo de 2018, Capital recurrió en alzada ante este Tribunal mediante un recurso de *Certiorari*, planteando que el TPI-San Juan, mediante su orden y mandamiento, eliminó las hipotecas de su tenencia, violando su derecho al debido proceso de ley.

21. El 30 de abril de 2018, el Tribunal de Apelaciones emitió una Resolución en la que desestimó el recurso de Capital, por falta de jurisdicción.[5] Expresó el panel hermano en su dictamen que el Laudo de Arbitraje advino final y firme, luego que el TPI-San Juan denegara la revocación del laudo, denegó la revisión de este, y Gables ni Capital recurrieran al Tribunal de Apelaciones. Dispuso, además, que lo único que le restaba a Capital era incoar un pleito independiente de nulidad de sentencia.

22. El 1 de mayo de 2019, Barreras presentó un asiento de inscripción al Registro de la Propiedad, amparado en el mandamiento del TPI-San Juan.

23. El 24 de mayo de 2019, Capital presentó un asiento a su favor en el Registro de la Propiedad, amparado en un dictamen que obtuvo a su favor en el Tribunal Federal, previo a la desestimación del mismo.

24. Sin embargo, por medio de una Orden y mandamiento enmendado (*nunc pro tunc*), Barreras inscribió la finca en cuestión a su favor, libre del gravamen hipotecario.

25. El 20 de febrero de 2020, Capital presentó una *"Demanda"* bajo la Regla 49.2(1) de Procedimiento Civil, sobre nulidad de sentencia.

26. Poco tiempo después, el 10 de abril de 2020, Capital presentó una *"Moción de Sentencia Sumaria"*. En la misma, Capital solicitó y argumentó lo siguiente:

---

[5] KLCE201800350.

a. Se declarara la nulidad de la Sentencia emitida por el TPI-San Juan el 18 de diciembre de 2017 (Civil Núm. K AC2016-1090 (908).

b. Se debió añadir como parte indispensable en el caso precitado, y como no se añadió, la sentencia es nula.

c. No se puede utilizar lo resuelto en el mencionado caso para afectar los derechos propietarios de Capital, y que así hacerlo es una violación al debido proceso de ley.

d. Que se decrete que ni el Laudo de Arbitraje, ni ninguna orden al amparo del mismo, es ilegal y nula en lo que concierne a Capital, por no haber este último pactado nada con las partes para someter las controversias a la American Arbitration Association.

e. Decrete la nulidad del asiento presentado por Barreras en el Registro de la Propiedad, amparado en el dictamen del caso Civil Núm. K AC2016-1090 (908), por entender que el mismo priva a Capital de su derecho propietario.

f. Decrete que Barreras está impedida de litigar cuestión alguna sobre los derechos de subrogación de Capital bajo el contrato de arrendamiento del año 1960, por ser la misma (en aquel momento) objeto de controversia ante el Tribunal Federal.

27. El 24 de agosto de 2020, Barreras presentó su *"Oposición a Moción de Sentencia Sumaria y Solicitud de Sentencia Sumaria de Barreras, Inc."*. En su moción, el demandado se opone alegando que:

a. Los acreedores hipotecarios sobre arrendamientos inscritos nunca han sido reconocidos como partes indispensables en los pleitos de terminación de contrato de arrendamiento y desahucio.

b. Capital no era parte indispensable en el pleito cuya nulidad solicita. Además, indica que no hay jurisdicción para que Capital relitigue su intervención, mediante la regla 49.2 de Procedimiento Civil.

c. Capital no tiene derecho a que se dicte sentencia sumaria a su favor, ya que el único interés que tuvo Capital fue sobre el arrendamiento con derecho a edificar en suelo ajeno de Gables. Como ese contrato ya no existe, por el incumplimiento de Gables, tampoco el interés hipotecario que alega tener el Capital.

28. El 15 de septiembre de 2020, Capital presentó su *"Oposición a Moción de Sentencia de Barreras, Inc."*. En su oposición, Capital argumenta que:

a. Los acreedores hipotecarios son partes indispensables en cualquier causa de acción en donde puedan quedar afectadas sus garantías.

b. No está relitigando su derecho a intervenir, sino que busca la nulidad de una sentencia que ordenó la eliminación de unas hipotecas, afectando su derecho propietario sobre las garantías de estas, y violentando el debido proceso de ley.

c. Que la regla 49.2 de Procedimiento Civil es la vía correcta para dejar sin efecto la sentencia recurrida, y anular los procedimientos que culminaron en la eliminación de los gravámenes hipotecarios a su favor.

29. El 3 de marzo de 2022, el TPI-San Juan emitió una *"Sentencia"* en la que declaró *"No Ha Lugar"* la *"Moción de Sentencia Sumaria"* y la *"Oposición a Moción de Sentencia Sumaria de Barreras, Inc."*, presentada por Capital. A su vez, declaró *"Ha Lugar"* la *"Oposición a Moción de Sentencia Sumaria y Solicitud de Sentencia Sumaria de Barreras, Inc."*. El Foro Primario sostuvo su determinación en las siguientes conclusiones:

a. Quien es parte indispensable depende de los hechos de cada caso. Explica el TPI-San Juan que Capital, en efecto, intentó intervenir en los procedimientos de arbitraje, y le fue denegado. También, intentó intervenir en la demanda de desahucio que Barreras levantó contra Gables. Sin embargo, su solicitud fue igualmente rechazada, pero no impugnada por Capital. Argumenta el Tribunal que esta inacción provocó que las denegatorias adviniera final y firme.

b. Las limitaciones de un proceso de arbitraje se circunscriben al mandato que lo faculta. En este caso, el Contrato de Arrendamiento entre Barreras y Gables facultaba a las partes a dilucidar sus controversias mediante arbitraje, pero nada decía sobre acreedores hipotecarios.

c. Los reclamos de parte indispensable, debido proceso de ley y nulidad de laudo debieron ser objeto de un recurso de revisión, una vez el TPI-San Juan confirmó el laudo de arbitraje. Indica el Foro

Primario que la Regla 49 de Procedimiento Civil no puede servir de subterfugio para revisar lo que advino final y firme.

30. El 19 de marzo de 2022, Capital presentó una *"Reconsideración"* ante el Foro Primario. En su escrito, Capital argumentó, en esencia, <u>lo mismo</u> que planteo en su *"Moción de Sentencia Sumaria"* y en su *"Oposición a Sentencia Sumaria de Barreras, Inc"*:

a. El proceso del Laudo violento el derecho de la Capital a un debido proceso de ley.

b. Capital era parte indispensable en los procedimientos de arbitraje y en el TPI-San Juan, que se celebraron referente a la propiedad en controversia. Alega que por no habérsele permitido ser parte, son estos nulos.

c. No fue hasta que Barreras solicitó la eliminación de las hipotecas de Capital, y el TPI-San Juan lo autorizó, que entonces quedó facultado Capital para solicitar una revisión.

d. En su solicitud de ejecución de sentencia, Barreras buscaba se declarara la inexistencia de las garantías hipotecarias a favor de Capital, para luego argumentar que no hay remedio para Capital, bajo la Ley del Registro de la Propiedad.

31. El 20 de abril de 2022, Barreras presentó su *"Oposición a Reconsideración"*. En su escrito, Gables alega, entre otras cosas, que los fundamentos de la reconsideración solicitada por la Capital son una repetición de sus previos escritos.

32. Finalmente, el 14 de noviembre de 2022, el TPI-San Juan emitió una *"Resolución",* en la que declaró *"No Ha Lugar"* la *"Reconsideración"* presentada por Capital y *"Ha Lugar"* la *"Oposición a Reconsideración"* presentada por Barreras. En la misma, el Foro Primario otorga razón al planteamiento de la Gables, y expone que *la reconsideración solicitada por la Capital es insuficiente en derecho, por lo que esta no procede.*

33. El 16 de diciembre de 2022, la apelante recurrió ante esta Curia, apelando la sentencia emitida y notificada sumariamente por el Foro Primario el 4 de marzo de 2022. En su recurso, presentó ante nos el siguiente señalamiento de error:

ERRÓ EL TPI AL CONCLUIR QUE UN ACREEDOR HIPOTECARIO NO PUEDE PEDIR, BAJO LA REGLA 49.2 DE PROCEDIMIENTO CIVIL, LA NULIDAD DE UNA SENTENCIA QUE CONFIRMA UN LAUDO

ARBITRAL EN EL QUE NO SE LE PERMITIÓ INTERVENIR, BAJO LA PREMISA QUE SUS DERECHOS HIPOTECARIOS NO QUEDARÍAN AFECTADOS, CUANDO EL LAUDO Y LA SENTENCIA QUE LO CONFIRMA ELIMINAN SU HIPOTECA SIN QUE HAYA PODIDO DEFENDERSE.

Con el beneficio de los escritos de las partes, este Tribunal dictó una *"Sentencia"* el 16 de noviembre de 2023, y sin entrar en los méritos de la controversia procedió a la *desestimación* del presente recurso por *falta de jurisdicción.*

Inconforme con nuestra determinación, la parte apelante recurrió ante el Tribunal Supremo de Puerto Rico el 12 de febrero de 2024.[6] Este Alto Foro, mediante sentencia del 9 de agosto de 2024 *"devuelve el caso al Foro Apelativo para que analice y disponga del recurso en sus méritos".*

En cumplimiento de la sentencia del Tribunal Supremo y perfeccionado el recurso ante nuestra consideración, procedemos a la adjudicación del presente caso en sus méritos.

**II.**

**A. Apelación Civil**

Es harto conocido que al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770 (2013). Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *Íd.,* pág. 771; *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la

---

[6] CC20240066.

dirección del proceso. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

Sin embargo, la norma de deferencia esbozada encuentra su excepción y cede cuando la parte promovente demuestra que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689 (2012). Además, se requiere que nuestra intervención en esta etapa evite un perjuicio sustancial. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Por *discreción* se entiende el "tener poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción". *García v. Asociación*, 165 DPR 311, 321 (2005), citando a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). No obstante, "el adecuado ejercicio de la discreción está inexorable e indefectiblemente atado al concepto de la razonabilidad". *Íd.* A esos efectos, el Tribunal Supremo de Puerto Rico ha indicado cuáles son situaciones que constituyen un abuso de discreción, a saber:

> [C]uando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos.
>
> *Ramírez v. Policía de P.R.*, 158 DPR 320, 340-341 (2002), citando a *Pueblo v. Ortega Santiago*, supra, págs. 211-212.

Así, pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho. *Rivera et al. v. Arcos Dorados et al.*, supra.

### B. Arbitraje

El surgimiento del *arbitraje* se da como un intento por alcanzar una solución de las controversias jurídicas de forma más pacífica y amigable que el proceso oficial con intervención del Estado. Sustituir el proceso público por uno *privado* con el fin de evitar el derecho oficial y conducirlo a la aplicación de un derecho considerado más beneficioso para las partes. Aun cuando esta práctica existe desde mucho antes que el derecho Romano, se le atribuye a este último el desarrollo y fortalecimiento de la figura.[7] En el Derecho Romano, este tenía el aspecto de *contrato de compromiso*, cuyo objeto era la controversia a resolver por los árbitros.[8] En el Derecho Canónico, por otro lado, surgió como transacción en la que el árbitro mediaba como conciliador, sin capacidad adjudicativa.[9] Esto fue así hasta la llegada del Código de las Siete Partidas en 1265, en donde se volvió a la concepción romana.[10]

En *Puerto Rico*, bajo la corona española, la *figura del arbitraje* se establecía como parte de los Códigos y Leyes de Enjuiciamientos Civiles. Bajo ese estado de derecho, la figura de arbitraje fue tratada y dividida como dos figuras sin unificación. Por un lado, como un contrato de transacción y, por otro, como un contrato de compromiso.[11] Así, teniendo su precedente del marco jurídico español, a mediados del Siglo XX se creó la hoy derogada Ley de Arbitraje Comercial en Puerto Rico, Ley Núm. 376 del 8 de mayo de 1951, 32 LPRA ant. secs. 3201-3228.[12] Esta logró conciliar la figura

---

[7] Pedro F. Silva Ruiz, *"El Arbitraje en Puerto Rico"*, Revista de Derecho Procesal, 2008-2, Rubinzal-Culzone, eds., Buenos Aires, Argentina, pp. 417-433.

[8] Tomás Ogayar Ayllón, *El Contrato de Compromiso y la Institución Arbitral*, Ed. Rev. Derecho Privado, Madrid, 1977, págs. 38-39.

[9] *Id.*

[10] Silva-Ruiz, op. cit.

[11] Véase Arts. 1709-1720 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. secs. 4821-4842. (Código Civil derogado).

[12] **Esta es la ley vigente a los hechos**, la cual fue derogada por la Ley 147 del 9 de agosto de 2024, conocida como "Ley de Arbitraje en Puerto Rico".

del arbitraje, unificando el concepto de compromiso y transacción, haciéndolo un convenio escrito entre las partes, válido, exigible, e irrevocable salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio. Ley de Arbitraje Comercial en Puerto Rico, supra, 32 LPRA ant. sec. 3201.

Actualmente, en Puerto Rico el arbitraje es un proceso adjudicativo en el que un interventor neutral, denominado "árbitro", recibe la prueba presentada por las partes en conflicto y, a base de esta prueba, emite una decisión llamada *Laudo*.[13] Bajo nuestro ordenamiento jurídico, el arbitraje es una figura inherentemente contractual. *Aponte Valentín et al. v. Pfizer Pharm.,* 208 DPR 263, 282 (2021). En un sentido más amplio, es la institución mediante la cual dos o más partes nombran a una o varias personas como "jueces" por medio de una declaración de sus voluntades, para que decida o decidan sobre las controversias que entre ellos existe y, de esta manera, obligándose a cumplir lo que estos decidan "*como si se tratara de una decisión judicial*".[14] Los elementos esenciales son la expresión de voluntad de las partes, el carácter vinculante de la determinación, la potestad del árbitro para dirimir el contrato mediante su decisión y, por último, el carácter *sui generis* de esta.[15]

En Puerto Rico existe una vigorosa política a favor del arbitraje como método alterno para la solución de conflictos, estableciendo que toda duda sobre si procede o no el arbitraje debe resolverse a favor de este, conforme haya sido pactado. *Aponte Valentín et al. v. Pfizer Pharm.,* supra, pág. 282; *Constructora Estelar v. Aut. Edif. Pub.*, 183 DPR 1, 30 (2011). No obstante, el Tribunal Supremo de Estados Unidos ha resuelto que los tribunales solo pueden invalidar

---

[13] Secretariado de la Conferencia Judicial del Tribunal Supremo de Puerto Rico. 1997. *Métodos Alternos para la Solución de Conflictos: Informes y Reglamentación.* Puerto Rico: Tribunal Supremo.

[14] Marchand Álvarez, Antonio. El Arbitraje: Estudio Histórico y Jurídico. Sevilla, Publicaciones Univ., Sevilla, 1981, p. 19.

[15] *Id.*

un acuerdo de arbitraje por las mismas razones que aplican a todo contrato bajo la ley estatal. *Aponte Valentín et al. v. Pfizer Pharm.,* supra, pág. 283; *Doctor's Associates, Inc. v. Casarotto*, 517 US 681, 687 (1996).

Por otro lado, a pesar de la gran deferencia que le confieren los tribunales a las interpretaciones que haga un árbitro en un laudo de arbitraje, existen instancias en que amerita la intervención judicial. *UGT v. HIMA,* 212 DPR 492, 500 (2023*); UGT v. Centro Médico del Turabo,* 208 DPR 944, 955 (2022). El tribunal podrá revisar, anular o modificar los laudos de arbitraje únicamente en los casos donde se demuestre que hubo: (a) fraude; (b) conducta impropia del árbitro; (c) falta del debido proceso de ley; (d) ausencia de jurisdicción; (d) que el laudo no resuelva todas las cuestiones en controversia que se sometieron; y, por último (e) una determinación contraria a la política pública. *UGT v. HIMA,* supra, pág. 500; *UGT v. Centro Médico del Turabo,* supra, págs. 955-956; *Indulac v. Unión,* 207 DPR 279, 295 (2021). Sin embargo, según establecido anteriormente, cuando se trata del hecho de que el laudo sea resuelto conforme a derecho, la revisión del foro judicial se limita únicamente a la corrección de errores jurídicos y a la validez jurídica del laudo de arbitraje. *Id.* Es decir, el tribunal se limitará a determinar si el derecho aplicado es el vigente en esta jurisdicción para así confirmar el laudo, revisarlo o modificarlo parcialmente.

Por ser relevante al caso de autos, resaltamos que el Artículo 1 de la Ley de Arbitraje Comercial de Puerto Rico, supra, establecía que los convenios de arbitraje se extendían *únicamente a las partes que lo suscribieran.* A esos efectos, el precitado Artículo reza de la siguiente manera:

> Dos o más partes podrán convenir por escrito en someter a arbitraje, de conformidad con las disposiciones de esta Ley, cualquier controversia que pudiera ser ***objeto de una acción existente entre ellos a la fecha del convenio de someter***

***a arbitraje;*** o podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de ***cualquier controversia que en el futuro surgiere entre ellos de dicho acuerdo o en relación con el mismo.***

Ley de Arbitraje Comercial de Puerto Rico, supra, ant. sec. 3201.
(Énfasis suplido).

### C. Parte indispensable

La Regla 16 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1, regula lo relacionado a la acumulación de partes. En específico, dispone que "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda". (Énfasis suplido). *Oriental Bank v. Pagán Acosta y otros,* 2024 TSPR 113, 215 DPR ___ (2024); *Inmob. Baleares et al. v. Benabe et al.,* 2024 TSPR 112, 214 DPR __ (2024); *Pérez Ríos et al. v. CPE,* 213 DPR 203, 213 (2023); *FCPR v. ELA et al.,* 211 DPR 521, 530 (2023).

Una parte es indispensable cuando la controversia no puede adjudicarse sin su presencia ***ya que sus derechos se verían afectados****. Inmob. Baleares et al. v. Benabe et al.,* supra; *FCPR v. ELA et al.,* supra, págs. 530-531; *Rivera Marrero v. Santiago Martínez,* 203 DPR 462, 463 (2019); *López García v. López García,* 200 DPR 50, 63 (2018). La misma alude a una parte cuyo interés en la causa de acción es de tal magnitud, que no puede dictarse un decreto final entre las otras partes sin lesionar y afectar radicalmente sus derechos. *Pérez Ríos v. et al. v. CPE,* supra, pág. 213; *López García v. López García,* supra, pág. 64; *Cirino González v. Adm. Corrección et al.,* 190 DPR 14, 46 (2014); *García Colón et al. v. Sucn. González,* 178 DPR 527, 548 (2010).

El alcance de la Regla 16.1, supra, forma parte del esquema de rango constitucional que prohíbe que una persona sea privada

de su libertad o propiedad sin el debido proceso de ley y la necesidad de que el dictamen judicial que en su día se emita sea uno completo. *Oriental Bank v. Pagán Acosta y otros,* supra; *Pérez Ríos et al. v. CPE,* supra; *RPR & BJJ Ex Parte,* 207 DPR 389, 407 (2021); *López García v. López García,* supra, pág. 63. Es por esto, que, ante la ausencia de una parte indispensable, el tribunal carece de jurisdicción para resolver la controversia. *Romero v. S.L.G. Reyes,* 164 DPR 721, 733 (2005).

Por otro lado, el Tribunal Supremo de Puerto Rico ha expresado que, a la hora de determinar si la presencia de una parte es indispensable para adjudicar una controversia, se debe analizar "si el tribunal podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente". *Inmob. Baleares v. Benabe et al.*, supra; *Bonilla Ramos v. Dávila Medina,* 185 DPR 667, 677 (2012). Cabe precisar que la falta de parte indispensable es un planteamiento tan vital, que se puede presentar en cualquier momento, incluyendo presentarlo por primera vez en apelación, o que el mismo se plantee *motu proprio* por el tribunal. *Oriental Bank v. Pagán Acosta y otros*, supra; *Pérez Ríos v. CPE,* supra, pág. 213; *RPR & BJJ Ex Parte,* supra, pág. 407.

### D. Relevo de sentencia

Las adjudicaciones finales de un tribunal gozan de una presunción de validez y corrección, por lo que son recipientes de una acostumbrada deferencia. *SLG Rivera-Pérez v. SLG Díaz-Doe, et al,* 207 DPR 636, 657 (2021); *López García v. López García,* 200 DPR 50, 59 (2018). Ahora bien, *la Regla 49.2* de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2, es el vehículo procesal mediante el cual una parte adversamente afectada por una sentencia, solicita el relevo de esta. *Oriental Bank v. Pagán Acosta y otros,* supra; *Pérez Ríos y otros v. CPE,* supra, pág. 214; *SLG Rivera-Pérez v. SLG Díaz-Doe et al,* supra, pág. 656-657; *HRS Erase vs. CMT,* 205 DPR 689, 698-699

(2020). El propósito de la precitada Regla es proveer un justo balance entre dos intereses conflictivos de nuestro ordenamiento jurídico. *López García v. López García,* supra, pág. 60.

La Regla en cuestión contempla seis (6) escenarios en los cuales el tribunal podrá relevar a una parte de los efectos de una sentencia dictada en su contra. Estos son:

(a) error, inadvertencia, sorpresa o negligencia excusable;

(b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;

(c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;

(d) nulidad de la sentencia;

(e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o

(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

Regla 49.2 de Procedimiento Civil, supra.
*Oriental Bank v. Pagán Acosta y otros,* supra.

No será suficiente que esté presente uno de los mencionados escenarios para que el tribunal deje sin efecto el dictamen notificado. El juzgador deberá evaluar el expediente del caso en su totalidad y determinar si bajo las circunstancias particulares del asunto amerita que se deje sin efecto la sentencia. *Dávila v. Hosp. San Miguel, Inc.*, 117 DPR 807, 817 (1986). Asimismo, el tribunal debe considerar los siguientes criterios: (1) cualquier defensa válida que pueda levantar la parte que se opone al relevo de sentencia; (2) el tiempo que transcurrió entre la sentencia y la solicitud del relevo; (3) el perjuicio que sufriría la parte opositora si se concede la solicitud del peticionario; y (4) el perjuicio que sufriría la parte

promovente de dejarle desprovista del remedio solicitado. *Pardo v. Sucn. Stella*, 145 DPR 816, 825 (1998).

Además, la Regla dispone un término fatal de seis (6) meses para la presentación del relevo de sentencia, al amparo de esta Regla. *Oriental Bank v. Pagán Acosta y otros,* supra; *Bco. Santander P.R. v. Fajardo Farms Corp.,* 141 DPR 237, 243 (1996). Sin embargo, en cuanto a la controversia planteada, la misma Regla aclara que:

> Esta Regla no limita el poder del tribunal para:
> (1) Conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento;
> (2) conceder un remedio a una parte que en realidad no haya sido emplazada, y
> (3) dejar sin efecto una sentencia por motivo de fraude al tribunal.

Regla 49.2 de Procedimiento Civil, supra.

Con relación a esta disposición en la Regla precitada, nuestro más alto Foro explica que "[se] admite generalmente el ejercicio de la acción independiente en casos de sentencias nulas, ya que [é]stas son inexistentes". *Bco. Santander P.R. v. Fajardo Farms Corp,* supra, pág. 244, citando a *Figueroa v. Banco de San Juan,* 108 DPR 680, 689 (1979).

De la misma manera, en *García Colón et al. v. Sucn. González,* 178 DPR 527, 543-544 (2010) se clarificó que:

> [E]l inciso (4) de la Regla 49.2 de Procedimiento Civil, *supra,* otorga al Tribunal la facultad de relevar a una parte de los efectos de una sentencia cuando se determine su nulidad. Una sentencia es nula cuando se ha dictado sin jurisdicción o cuando al dictarla se ha quebrantado el debido proceso de ley. [...] Es importante destacar que según este fundamento no hay margen de discreción, como sí lo hay bajo los otros fundamentos de la Regla 49.2 de Procedimiento Civil, *supra*; si una sentencia es nula, tiene que dejarse sin efecto independientemente de los méritos que pueda tener la defensa o la reclamación del perjudicado.

Por otro lado, el Tribunal Supremo de Puerto Rico ha enfatizado sobre atacar una sentencia final y firme que:

> **[C]abe apuntar que "[u]na vez que se archiva en autos la notificación y se registra la sentencia, ésta se considera final. A partir de ese momento los derechos y obligaciones de las partes quedan adjudicados y la sentencia goza de una presunción de corrección".** (Énfasis nuestro) (citas omitidas). Por consiguiente, "la sentencia se convierte en firme según el transcurso del tiempo. **Es firme una vez transcurrido el término para pedir reconsideración o apelar sin que esto se haya hecho, o al concluir el proceso apelativo".** (citas omitidas). Es decir, una sentencia es final y definitiva **"'cuando resuelve el caso en sus méritos y termina el litigio entre las partes, en tal forma que no queda pendiente nada más que la ejecución de la sentencia'**. *(citas omitidas).* Mientras, "[l]a adjudicación se presume válida y correcta hasta tanto sea reconsiderada, modificada o revocada mediante un remedio o recurso". (citas omitidas).
>
> *SLG Szendrey-Ramos v. Consejo de Titulares,* 184 DPR 133,156-157 (2011).

(Énfasis suplido).

### III.

La parte apelante comparece ante esta Curia solicitando que decretemos nula una *"Sentencia"* emitida el 3 de marzo de 2022. Arguye como *único error,* que el Foro Apelado se equivocó al concluir que él, como acreedor hipotecario, no podía solicitar la nulidad del dictamen en cuestión por ser parte indispensable. *No le asiste la razón.*

Entendemos que, en el caso de autos, Capital es una parte con interés propietario en el pleito, de conformidad a la definición de nuestro ordenamiento jurídico sobre parte indispensable. Sin embargo, en el contexto del arbitraje, el apelante no es una parte sin la cual la controversia no podía dilucidarse. Esto, ya que el laudo

recayó sobre asuntos de incumplimiento contractual únicamente entre Barreras y Gables.

Ahora bien, es harto conocido el principio cardinal de nuestro sistema adversativo, que el derecho es rogado, y corresponde a la parte que pueda afectarse, solicitar lo que en derecho proceda. *SLG v. Srio. de Justicia*, 152, DPR 2, 8 (2000). Capital intentó intervenir en el laudo de arbitraje, y luego en la impugnación del mismo ante el foro judicial. Luego de no prosperar, los dictámenes advinieron final y firme.

El recurso de la Regla 49.2 de Procedimiento Civil, supra, puede incoarse cuando una sentencia sea nula. Y, si bien es cierto que la falta de parte indispensable puede anular un dictamen, no nos convence esta teoría en el caso de marras. Los intentos de intervención de parte de Capital son prueba *prima facie* de que reconocía el interés que tenía sobre la propiedad objeto de arbitraje. Sin embargo, luego de no prosperar en su intervención, se cruzó de brazos y permitió que los dictámenes adquirieran carácter de cosa juzgada. Ahora, no puede ampararse en la precitada Regla como subterfugio, para intentar redimir un interés sobre el cual ya recayó una determinación, de manera final y firme.

## IV.

Por los fundamentos que anteceden, *confirmamos el dictamen apelado.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Notifíquese.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones